**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Johnnie Ruth SMITH, Loretta Stephens,
and Mary Hooper,
Defendants-Appellants.**

No. 78–5341.

United States Court of Appeals,
Fifth Circuit.

June 6, 1979.

---

Philip I. Palmer, Jr., Dallas, Tex. (Court-appointed), for Loretta Stephens.

Mary Hooper, pro se.

Bruce Budner, Dallas, Tex. (Court-appointed), for Smith and Hooper.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Shirley Baccus-Lobel, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before AINSWORTH and VANCE, Circuit Judges, and BOOTLE, District Judge.*

VANCE, Circuit Judge:

This case requires further consideration of 18 U.S.C. § 641 in connection with thefts of funds that originated with the federal government but were administered by a local educational institution.

Appellants were clerical employees of Bishop College in Dallas, Texas. They and several codefendants were charged in a twelve count indictment with (1) conspiracy to steal federal funds and to defraud the United States, 18 U.S.C. §§ 641 and 2073, and (2) substantive violations of 18 U.S.C. § 641. They were convicted as to all counts in which each defendant was named.

Four hundred forty-five checks were drawn against College Work-Study (CWS) funds to fictitious persons, or at least persons who did not attend Bishop College, and were cashed with forged endorsements. In this manner defendants and their coconspirators stole approximately $55,000.

The single contention argued on appeal is that the stolen money did not constitute "money . . . of the United States" within the meaning of 18 U.S.C. § 641.

On the day of oral argument this court's opinion in *United States v. Rowen*, 594 F.2d 98 (5th Cir. 1979) was released. *Rowen* and our earlier opinion in *United States v. Evans*, 572 F.2d 455 (5th Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978) establish the principles which control the present case. In *Evans* the misappropriated funds were Federally Insured Student Loans and National Direct Student Loans. In *Rowen* the stolen money was supplied from the Basic Educational Opportunity Grant program. In both prior cases, as here, the federal character of the stolen money was questioned.

The CWS program was established by the Higher Education Act of 1965, 42 U.S.C. §§ 2751–2756a. It promotes part-time em-

---

* District Judge of the Middle District of Georgia, sitting by designation.

ployment for needy students, primarily from low income families. Eighty percent of the funds is provided by the federal government, but the local institution must supply the remaining twenty percent. Federal regulations establish the criteria for participating on-campus and off-campus work projects, student eligibility, determination of financial need, rates of pay and number of hours worked. The type of student application to be filed, the books and records to be kept, the forms of agreements to be used, and the reports to be made are all established in the same manner. Unexpended funds and interest earned on CWS funds belong to the federal Office of Education.

When first received, CWS funds are deposited into Bishop College's general revenue account at Republic National Bank. Within a few days they are transferred into a special CWS account maintained by the college at South Oak Cliff State Bank. Funds used in the administration of the program are paid out of this special account to the student recipients. It was from this special CWS account that funds were stolen by defendants.

 The cases demonstrate the evolving programs for distribution of federal funds to college students and the increased utilization of nonfederal agencies in their administration. Under similar but changing facts the pertinent inquiry is when such funds lose their federal character. We may accept the argument that when an outright grant is paid over to the end recipient, utilized, commingled or otherwise loses its identity, the money in the grant ceases to be federal. *See United States v. Owen*, 536 F.2d 340 (10th Cir. 1976); *United States v. Farrell*, 418 F.Supp. 308 (M.D.Pa.1976). If so, its theft would not then be within the reach of 18 U.S.C. § 641. We are not required to decide just where short of that point the line should be drawn. We continue to approach the problem on a case by case basis, but under present facts, applica-

tion of general principles does not present great difficulty.

*Evans* teaches that in this situation the key factor is the supervision and control contemplated and manifested on the part of the government. While identifiable funds appropriated for use in a federal program are in transit between their federal source and their intended recipient and are still subject to substantial federal controls, they remain federal funds, and their theft is punishable under the section in question. Those critical elements are present here and support the finding that the stolen funds were "money . . . of the United States."

AFFIRMED.