**UNITED STATES of America, Plaintiff,**

v.

**Rick F. HEBER, a/k/a Franz Heber, and Patrick J. Flanigan, Defendants.**

**No. 81–CR–20.**

United States District Court,
W. D. Wisconsin.

June 15, 1981.

Frank M. Tuerkheimer, U. S. Atty., Madison, Wis., for plaintiff.

Stephen M. Glynn, Milwaukee, Wis., for defendant Heber.

Vernon Molbreak, Madison, Wis., for defendant Flanigan.

## OPINION AND ORDER

CRABB, Chief Judge.

Defendants are charged with one count of conspiring to defraud the United States of moneys to which it was entitled and twelve counts of violating 18 U.S.C. § 641 by knowingly converting moneys of the United States to their own use; specifically, moneys in the form of "program income," as defined in 45 C.F.R. Part 74. In addition, defendant Flanigan is charged separately with one count of knowingly converting to his own use money of the United States and the Department of Health, Education and Welfare.

Presently before the court are the motions of both defendants to dismiss the indictment on the ground that it does not state facts sufficient to constitute an offense, and the motions of defendant Flanigan for (1) a bill of particulars and (2) dismissal of Count I of the indictment on the ground it is barred by the statute of limitations.

*The Motions to Dismiss the Indictment*

Section 641 of Title 18 provides a criminal penalty for embezzling, stealing, purloining, or knowingly converting to one's own use moneys of the United States or of any of its departments or agencies. The moneys alleged to have been wrongfully converted by these defendants are registration fees and other sums paid by and on behalf of trainees attending training sessions organized by defendants and funded by grants from the Department of Health, Education and Welfare.

Defendants contend that the indictment fails because it does not state facts from which it can be determined that the registration fees were moneys of the United States. They dispute both the validity of the government's theory and the sufficiency of the facts alleged to support the theory that the registration fees became moneys of the United States because they constituted "program income," which "program income" is money of the United States.

To understand the contentions of the parties, it is necessary to examine the government's theory in some detail.

Through the indictment, the government has charged that grants were awarded by the United States Department of Health, Education and Welfare (or, after 1980, by the United States Department of Education) to the Board of Regents of the University of Wisconsin, and that the purpose of the grants was the funding of a Project: the Rehabilitation Research and Training Center in Mental Retardation, administered through the Department of Studies in Behavioral Disabilities, University of Wisconsin. Defendants were the Director and Associate Director of this Project. The indictment alleges that one of the Project's purposes was to provide training for persons working in the field of mental retardation; that to effectuate this purpose, training sessions were held in Madison, Wisconsin for persons working in the field of mental retardation; that funds were made available under the grants to pay the travel and per diem expenses of persons attending training courses, but that registration fees and other sums charged for attendance at the sessions were paid by the trainees or by the organizations for which they worked; and that these fees were paid either directly to defendants or, at defendant Flanigan's direction, to the Wisconsin Association for Retarded Citizens, Inc., and from there to defendants.

It is the government's theory that under the terms of the grant and the applicable regulations (Part 74 of Title 45, Code of Federal Regulations), income generated by a grant-funded program is income earned by or accruing to the grant recipient to be used by the recipient in conformance with the specific provisions of the particular grant and the general provisions of 45 C.F.R. § 74.42. Thus, program income is to be used to reduce the amount of federal funding or, if the language of the grant permits, for meeting cost-sharing or matching fund requirements or for payment of expenses which are in addition to those allowable under the project but which further the broad objectives of the federal statute under which the grant is made.

The government's theory rests upon definitions set out in Part 74 of Title 45. Section 74.41(a) of that part defines "program income" as

> gross income earned by a recipient from activities part or all of the cost of which is either borne as a direct cost by a grant or counted as a direct cost towards meeting a cost sharing or matching requirement of a grant.

45 C.F.R. § 74.3 defines a "recipient" as a "grantee or sub-grantee," and a "grantee" as the "legal entity to which a grant is awarded and which is accountable to the Federal Government for the use of the funds provided."

█ Defendants contend the indictment is deficient because it alleges that defendants "earned" the registration fees, but fails to allege that defendants were either recipients or grantees. From this they argue that the defendants' earnings cannot be considered to be program income.

In fact, the indictment does not allege that defendants earned the registration fees; it alleges only that registration fees were charged and received by defendants. It was the training sessions, funded in whole or in part by the federal grants, which generated the registration fees. Under these circumstances, the earner of the income is the entity through which the defendants operated: the University of Wisconsin.

As the regulations make clear, the grantee is the "entire legal entity even if only a particular component of the entity is designated in the award document." 45 C.F.R. § 74.3. If the grantee is viewed as the entire legal entity, it follows that income earned by any component of the entity from grant-funded activities is income earned by the legal entity. Applying this straightforward construction to the facts alleged in the indictment, I see no deficiency in the failure to allege that defendants were the grant "recipients." [1] The University of Wisconsin, by its governing board, was the named recipient of the grants in question and the University of Wisconsin, through one of its component academic departments, was the earner of the registration fees and other sums. Those earnings constitute "program income" under § 74.41.

The same conclusion is reached if defendants are viewed as agents for the recipient Board of Regents for the purpose of administering the grants. As agents for that purpose, they are also agents for the Board when they (or their programs) generate and receive income and as such, they collect the income on behalf of their principal, the grant recipient.

Under either of these views the Board of Regents is the earner of the income, whether or not it ever actually received the program-generated funds or even knew of their existence.

Defendants assert that the indictment fails to identify the training session for which fees were charged as the training sessions which were funded under the HEW grants. The assertion does not survive a careful, commonsense reading of the indictment. Paragraph (1)(e) makes clear that the training sessions described later in the indictment are the training sessions provided by the federally-funded Project. That the training sessions fit the definition of "activities" is clear. As the indictment alleges, at least part of the cost of the training sessions (the funding of the sponsor and the payment of travel and per diem costs) was borne by grant funds.

I see no insufficiency in the indictment as it relates to the charges that the defendants conspired to convert and did convert program income to their own use.

Defendants make the additional argument that the program income described in the indictment has not been shown to be money of the United States; that is, even conceding that the funds constitute program income, there is an insufficient nexus alleged between such program income and money of the United States. In support of their argument, they cite *United States v. Freeman*, 443 F.Supp. 288 (N.D.Cal.1977), acknowledging that the facts are "somewhat different" from those alleged in the indictment at issue here. In fact, Freeman was indicted for misuse of CETA funds and failure to turn over earnings generated by the improper application of federal grant funds (using funds intended to train truck drivers to rent trucks for commercial hauling). The district court found the private income earned by Freeman not to be property of the United States within the meaning of 18 U.S.C. § 641. As the government points out, in the case before the court the earnings were generated out of one of the programs funded under the grant, not out of a wholly separate activity carried on by defendants. This distinction in the fact sit-

1. Defendant Heber contends that this construction "casts common sense to the winds," by making every employee of the University of Wisconsin system a potential defendant against a claim of misuse of grant funds. I see nothing nonsensical in a construction that has the effect of making potential defendants of every employee of the university system who, being in a position to do so, converts federal grant funds to his or her own use.

uation undercuts much of the significance of the holding in Freeman.

More importantly, however, the analysis employed in *Freeman* is at odds with that followed in the Seventh Circuit. In *United States v. Mitchell*, 625 F.2d 158, 160 (7th Cir. 1980), the court of appeals held that in determining whether § 641 covers funds embezzled from accounts made up in part by federal funds, the key factor is the "supervision and control contemplated and manifested by the federal government." [2] Although some of the aspects of federal government control over the grant funds involved here may have to await development at trial, the applicable regulations evince sufficient indicia of control on the part of the government to withstand a motion to dismiss.

Under the provisions of 45 C.F.R. § 74.42, grant recipients are required to retain program income for use only as directed in the regulations and in the specific terms of the grant. The grantee is accountable to the federal government for the use of the funds provided under the grant, 45 C.F.R. § 74.3, according to detailed regulations set out in Part 74 dealing with such matters as retention of and access to all financial and programmatic records, 45 C.F.R. §§ 74.20–74.-25; financial management standards and audits, 45 C.F.R. §§ 74.60–74.62; financial reporting requirements, 45 C.F.R. §§ 74.70–74.76; grant payment requirements, 45 C.F.R. §§ 74.90–74.97; and programmatic changes and budget revisions, 45 C.F.R. §§ 74.100–74.108. In the face of these detailed restrictions on the use and reporting of funds granted to and generated by grant recipients, I find no basis for defendants' argument that the "program income" generated by the training sessions was not money subject to the ultimate control of the United States and its agency, the Department of Health, Education and Welfare.

■ Finally, defendants argue that the intricacy of the government's theory reveals a due process defect; that it is too complex to be understood reasonably by persons to whom the criminal penalties might apply. The argument is a red herring. It assumes that the potential defendant must understand the federal character of the wrongfully converted funds, but no such understanding is required. It is the knowing and intentional conversion of funds that must be proved; not that the defendants knew that the funds belonged to the United States. The federal character of the funds merely provides the nexus for federal jurisdiction. *United States v. Smith*, 489 F.2d 1330 (7th Cir. 1973), quoting *United States v. Howey*, 427 F.2d 1017, 1018 (9th Cir. 1970):

> The reason for including the requirement that the property, in fact, belongs to the Government was to state the foundation for federal jurisdiction. A defendant's knowledge of the jurisdictional fact is irrelevant, as we have held in many cases interpreting analagous statutory provisions.

With respect to Count XIV of the indictment charging only defendant Flanigan with knowing conversion to his own use of moneys of the United States, defendant Flanigan has advanced no argument.

---

**2.** In a case decided two years earlier, *United States v. Maxwell*, 588 F.2d 568 (7th Cir. 1978), the court of appeals held that supplemental educational opportunity grant funds paid to a junior college constituted moneys of the United States, on the theory that because the Department of Health, Education and Welfare retained a reversionary interest in the funds, the junior college was the trustee of the funds for the benefit of the United States. Although *Mitchell* and *Maxwell* were decided on different theories, the analyses are not incongruent. In both cases, a key factor was the degree of control retained and exercised by the federal government. In *Maxwell*, it was a reversionary interest manifested in the authorizing statute; in *Mitchell*, it was the network of federal supervision and control over the funds granted to the state program which was the drawer of the aid warrant which defendant Mitchell tried unsuccessfully to convert to his own use.

In *Mitchell*, the court of appeals indicated its intention of following the law developed by the Court of Appeals for the Fifth Circuit in *United States v. Evans*, 572 F.2d 455 (5th Cir. 1978), cert. den. 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Rowen*, 594 F.2d 98 (5th Cir. 1979); and *United States v. Smith*, 596 F.2d 662 (5th Cir. 1979).

Therefore, I have given no consideration to the motion as it might be directed to that count.

*Motion to Dismiss Count I*

Defendant Heber has withdrawn his earlier filed motion to dismiss based on the statute of limitations; defendant Flanigan has modified his motion to refer to a five-year limitations period, rather than a three-year period, but otherwise stands by the motion. However, there seems to be some miscommunication between defendants, as defendant Flanigan indicates that he will rely on defendant Heber's arguments in support of the motion to dismiss and defendant Heber has never made any such arguments.

Defendant Flanigan has made no reference to the statute of limitations argument in either of his two briefs. In the absence of any argument on the point, I am not disposed to consider this motion further.

*Motion for Bill of Particulars*

Defendant Flanigan's motion for a bill of particulars will be denied on the ground that it is meritless. It is directed to determining the government's legal theory, rather than any specification of factual matters. The government has set out its legal theory in great detail in its brief in opposition to defendants' motions. No further exposition is warranted or is it necessary to an understanding of the case.

### ORDER

IT IS ORDERED that the motions of both defendants to dismiss the indictment as insufficient are DENIED; defendant Flanigan's motions for dismissal of Count I and for a bill of particulars are DENIED also.