UNITED STATES of America, Plaintiff,

v.

James HARRIS and Richard
Gray, Defendants.

No. 83 CR 6.

United States District Court,
N.D. Illinois, E.D.

April 19, 1983.

Dan K. Webb, U.S. Atty. by Candace J. Fabri, Ludwig E. Kolman, Sheldon Zenner, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Patrick A. Tuite, David S. Mejia, Law Office of Patrick A. Tuite, Ltd., Chicago, Ill., for defendant Harris.

Lawrence Levy, Chicago, Ill., for defendant Gray.

## ORDER

BUA, District Judge.

This order addresses defendants'[1] post-trial motions for 1) an order of arrest of judgment and 2) a new trial based on alleged insufficiency of evidence and failure to provide *Brady* material. Those motions are denied.

## I.

Defendants, employees of the Chicago Housing Authority ("CHA"), were found guilty after a bench trial of violations of 18 U.S.C. §§ 371 and 657. Briefly, defendants were charged with and convicted of stealing Chicago Housing Authority tile, selling that tile, installing it on CHA time, and concealing their acts.

■ The defendants' motion for arrest of judgment is based generally on their claim that the charges against them do not constitute a federal crime. The court, on careful review of the authorities cited, rejects this assertion.

## A.

Defendants first argue that the government failed to show that the Department of Housing and Urban Development ("HUD"), a federal agency, possesses the "right" to be free of the activity charged in Count I of the indictment. In the absence of such a "right," defendants claim no conspiracy under 18 U.S.C. § 371 may be found.

Defendants' argument flies in the face of well-settled interpretation of the coverage of 18 U.S.C. § 371. *See Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924); *Dennis v. United States,* 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966) ("[§ 371] reaches 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government.' [citations omitted]"); *United States v. Burgin,* 621 F.2d 1352, 1356 (5th Cir.1980) *quoting Hammerschmidt* and *Dennis.* The

cited cases make clear the fact that § 371 creates a right in HUD to be protected from the unlawful behavior charged in the instant indictment. It is beyond question that the functional integrity of federal housing programs is seriously undermined, impaired and obstructed by the theft and unlawful private sale of CHA materials. The evidence indicates that the CHA is a federally subsidized agency the activities of which are crucial to the implementation of federal goals, programs and guidelines regarding public housing. To this end, the Department of Housing and Urban Development plays an active role in monitoring CHA activities, reviewing CHA books and records, and exercising veto power over various CHA appropriations. *See generally* 42 U.S.C. §§ 1401 *et seq.* and 24 C.F.R. Ch. 8. HUD's supervisory function is thus active and pervasive. It cannot be gainsaid that the unlawful appropriation of CHA materials threatens the financial and administrative integrity of CHA and thus ultimately undermines the goals of the federal housing program and, therefore, HUD. It is consequently beyond question that defendants' acts constitute a "conspir[acy] either to commit [an] offense against the United States, *or to defraud the United States, or any agency thereof in any manner or for any purpose....*" 18 U.S.C. § 371. (emphasis added).

Defendants' second argument, namely that the instant indictment fails properly to charge "an offense against the United States" is merely a variation on its original theme. It is therefore similarly rejected.

## B.

Defendants next turn to Count Two of the indictment, charging a violation of 18 U.S.C. § 657. That statute lists various lending, credit and insurance institutions, including HUD, and provides that:

"Whoever, being an officer, agent, or employee of or connected in any capacity with ... [one of the listed institutions] ..., and whoever being a receiver of

1. Defendant Harris filed a post-trial motion which was adopted and joined in by defendant Gray. No additional motion was filed by defendant Gray.

such institution, or agent or employee of the receiver embezzles . . . things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more than $5,000.00 or imprisoned not more than five years, or both; but if the amount or value embezzled . . . does not exceed $100.00, he shall be fined not more than $1,000.00 or imprisoned not more than one year, or both."

■ Defendants' preliminary argument is that the conviction cannot stand because defendants do not fall within the purview of § 657. Defendants claim that they are not "officer[s], agent[s], or employee[s] of or connected in any capacity with" HUD. The court believes that this argument is without merit. The indictment in this case charged that the defendants, being employees of the Chicago Housing Authority, an entity funded and subsidized by the United States Department of Housing and Urban Development, defrauded CHA by embezzling CHA property for their personal use. The allegations that Harris and Gray were employees of CHA, and that CHA was funded by HUD, bring the defendants within the language of Section 657. As has already been stated, the statute applies to officers, agents, employees, or people connected in any capacity with the designated federal agencies. The language of Section 657 is similar to the language of 18 U.S.C. § 201 which prohibits bribery of federal officials. Section 201(a) defines a federal public official as "an officer or employee or person acting for or on behalf of the United States or any department, agency or branch of government." [2] The Seventh Circuit in *United States v. Mosley,* 659 F.2d 812 (7th Cir.1981) held that an individual hired by a state agency (the State of Illinois Bureau of Employment Security: "IBES") and paid through that agency may be found to be a federal employee or public official within the meaning of Section 201. The "federal connection" in *Mosley* was found in the fact that the defendant was employed by IBES

as a CETA (Comprehensive Employment and Training Programs Act, 29 U.S.C. § 801, *et seq.* ) Intake and Eligibility Officer. IBES was the "prime sponsor" of the Chicago CETA program. The court noted that IBES was funded by the Federal Government, and that "[t]he statutory provisions of CETA clearly set forth substantial federal government supervision of the local [program]." *Id.* at 814. Specifically, the court pointed out that, as part of the regulatory relationship between the Department of Labor and the local authorities, the Department of Labor required submission of a comprehensive plan and a detailed description of record keeping procedures. The purpose of these submissions was to allow the secretary to assure compliance with all relevant regulations, to monitor progress toward legislative goals, and to review budget and expenditure practices. The regulatory scheme further provided that on review of any compliance plans the Department of Labor could reject or order alterations to those plans. Moreover, if the Department of Labor were to determine that a local agency was not in compliance with the statute or one of the applicable federal regulations, the secretary of the Department of Labor could revoke all or part of the financial assistance provided to the local agency.

As was indicated above, the regulatory scheme which operates between the Federal Department of Housing and Urban Development and the Chicago Housing Authority contains provisions for similarly substantial supervision. The evidence introduced at trial established that HUD required submission of a plan by the Chicago Housing Authority and retained the right to approve or disapprove that plan. Moreover, HUD monitors CHA activities by requiring it to keep books and submit regular audits and reports. As indicated at trial if HUD determines that expenditures by CHA are inappropriate, HUD can disallow those expenditures and impose other appropriate

---

**2.** In fact, it should be noted that the language of § 201 is actually somewhat narrower than that of § 657. The latter statute contains the catch-all phrase "people connected in any capacity with." The following analysis should be viewed in this context.

sanctions. In short, the testimony at trial indicated a pervasive scheme of federal regulation to insure that the Chicago Housing Authority is administered in a manner consistent with federal goals and guidelines. Thus, the analysis adopted by the Seventh Circuit in *Mosley* is fully applicable to this case, and mandates a finding that the federal regulatory relationship renders defendants Harris and Gray "officer[s], agent[s], [or] employee[s] of or [individuals] connected in any capacity with" the Department of Housing and Urban Development within the meaning of 18 U.S.C. § 657.

■ Finally, defendants assert that the conviction cannot stand under § 657, in that the government failed to show that the stolen tile was a thing "of value belonging to" HUD "or pledged or otherwise entrusted to its care." To support this argument, defendants cite no relevant cases at this point in their brief; however, they presumably would like this court to rely on a case cited earlier in their memorandum, *United States v. Farrell,* 418 F.Supp. 308 (M.D.Pa. 1976). *Farrell* is indeed relevant to defendants' argument. It interprets 18 U.S.C. § 641, a statute containing language substantially identical to that of § 657,[3] in the context of the theft of a television set which had been purchased with funds furnished under Title I of the Elementary and Secondary Education Act of 1965. The set, at the time of theft, was being used in a local school district's Head Start Program. The court found that the set was not a "thing of value" of the United States and dismissed the indictment.

The Seventh Circuit has distinguished *Farrell* and limited it to its facts. *See United States v. Maxwell,* 588 F.2d 568 (7th Cir.1978), *cert. denied* 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979). And in a more recent opinion, the court has delineated the proper approach to a determination of whether a particular item is a "thing of value of the United States" for purposes of § 641. *United States v. Mitchell,* 625 F.2d

158 (7th Cir.1980). Citing *United States v. Smith,* 596 F.2d 662 (5th Cir.1979), Judge Pell stated in language fully applicable to the present case, that the relevant inquiry is "whether the federal government exercised sufficient supervision and control over [the object of the theft]." *Mitchell,* 625 F.2d at 161. As this court's earlier analysis indicates, p. 1179, *supra,* the HUD–CHA relationship more than meets this requirement. Therefore, it is beyond question that a federal offense was both adequately alleged and proven in this case.

II.

A.

Defendants move for a new trial on two grounds. Preliminarily, they claim that the evidence was insufficient to establish the requisite elements of the crimes for which they were convicted. The court rejects this assertion.

Defendants first claim that the government failed to prove the requisite connection between HUD and CHA to permit federal prosecution. Once again, this court states its belief that the proof of federal regulation was more than adequate to justify conviction under 18 U.S.C. §§ 371 and 657. At trial, the court heard the testimony of one of the regional administrators for the Department of Housing and Urban Development who delineated the extensive federal regulation of CHA. That regulation includes, in part, requirements of prior approval for expenditures and of interim audits of CHA's budget, combined with the possibility of federal revocation or disallowance of CHA expenditures found to be inconsistent with HUD guidelines. In fact, the CHA regional administrator testified that the Department of Housing and Urban Development assists in negotiating contracts for CHA. Letters introduced at trial indicate that HUD has even assisted in negotiating the salary of CHA employees. Furthermore, contrary to the defendants'

---

3. Title 18 U.S.C. § 641, in pertinent part, prohibits the embezzlement, theft, or knowing conversion of a "thing of value of the United States or of any department or agency thereof."

assertion that HUD gives $120,000,000 per year to the CHA as a "gift," the evidence clearly indicates that HUD retains control over CHA spending from the beginning to the end of each project. Finally, the court took judicial notice of sections of the United States Code which 1) outline the nature of developments to be built and identify the types of individuals who qualify to live in those developments, 2) specify the circumstances under which CHA qualifies for federal funding and retains the right to that funding, and 3) delineate the circumstances under which CHA may lose its right to federal funding. In sum, the court believes that the evidence indicated substantial supervision and control of the type contemplated by *United States v. Mitchell, supra.*

Defendants next claim that the evidence adduced at trial was insufficient to establish that Harris and Gray had the requisite criminal intent to conspire to defraud the federal government. This is yet another variation on a familiar theme. The evidence established that the positions held by Harris and Gray render untenable any argument that they were unaware of the extensive federal regulatory scheme governing the HUD–CHA relationship. For example, newsletters distributed to CHA employees and introduced at trial frequently refer to the regulatory and funding relationship between HUD and CHA. Also introduced were letters which were addressed to employees in the position of Harris and Gray and which specifically outlined the function of the Department of Housing and Urban Development in negotiating Mr. Harris' and Mr. Gray's salaries. In light of the above, the court believes that the government carried its burden of proof on this issue.

The defendants also contend that the government failed to establish that six cartons of Gafstar tile, having a value in excess of $100, were used by the defendants. The testimony at trial by the two undercover agents who were present at the house on South Parnell on the date that the tile was installed was that six boxes of tile were used. Further, the testimony at trial as to the value of those boxes of tile places it in excess of $100.

Lastly, the defendants claim that the government has failed to overcome the defense of entrapment beyond a reasonable doubt. The transcripts which were introduced at trial clearly overcome that claim. Although the defendants did inquire about performing the work on something other than a weekday, those transcripts specifically indicated that the undercover agents told both Harris and Gray to do the work when they wanted. Harris and Gray were provided with a key to the undercover location so that they could perform the work whenever they wished. As the evidence indicated, both defendants chose to work while on CHA time.

### B.

Defendants finally ask the court to set aside the convictions and permit a new trial, claiming that the government failed to provide *Brady* material. The court has reviewed that claim and finds it to be devoid of merit. The request for a new trial on these grounds is consequently denied.

IT IS SO ORDERED.