**KETO v. UNITED STATES.**

No. 14255.

United States Court of Appeals
Eighth Circuit.

May 8, 1951.

Thomas Paul Downs, Kansas City, Mo., for appellant.

Leo P. Flynn, U. S. Atty., and Matthew A. Brown and Francis G. Dunn, Asst. U. S. Attys., all of Sioux Falls, S. D., for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from an order denying the motion of Tommy Keto (who will be referred to as defendant) to vacate a sentence of imprisonment imposed upon him September 13, 1946, after his plea of guilty to an information charging him with the armed robbery, on August 29, 1946, of the Bear Butte Valley Bank, of Sturgis, South Dakota. See 12 U.S.C.A. § 588b.[1] He contends that the court was without jurisdiction to impose sentence, because the information[2] failed to state that the bank was

1. 1948 Revised Criminal Code, 18 U.S.C.A. § 2113.
2. "In the District Court of the United States, District of South Dakota, Western Division.

"United States of America,
                                    Plaintiff,
                vs.
Tommy Kito,
                                    Defendant.

Crim. No. 3115 W. D.
Information
12 U.S.C., Sec. 588b

"The United States Attorney informs the Court:

the kind of a bank the robbery of which would constitute a federal offense. See 12 U.S.C.A., § 588a.[1]

The information was filed on September 10, 1946. The defendant had on that day filed a formal waiver of indictment and consent to be prosecuted by information.[3] See Rule 7(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. Upon arraignment, the defendant, who was represented by counsel, again, in open court, waived indictment and entered a plea of guilty to the information. Sentence was deferred by the court pending a pre-sentence investigation by the Federal Probation Officer.

On September 13, 1946, the defendant appeared for sentence with his counsel. Mr. George Philip, the United States Attorney (now deceased) first called the court's attention to the fact that the defendant's name was "Keto", not "Kito", and then said: "I want to make a statement to the record. It is not specified in the information that the Bear Butte Valley Bank, which was the victim bank of the robbery charged in the information, is a member of the Federal Deposit Insurance Corporation. I have talked to counsel for the defendant and I am advised by him that he and his client are fully aware, and were at the time of the pleading, that that was the situation of the Bear Butte Valley Bank. The Statute, as required by the new rules, is cited in the information and charges a violation of that particular statute. I think it is entirely a formality. My attention was called to it by Matt Brown, but counsel for the defendant and I have agreed that no amendment of the information under Rule 7e is required under the circumstances."

The court replied, "Very well." Mr. Philip then moved for sentence.

The court said to the defendant: "By criminal information No. 3115, which was filed and made a record of this court on the 10th day of September, 1946, you are charged with the violation of the federal statute in that it is alleged that you perpetrated the robbery of the Bear Butte Valley Bank, contrary to the provisions of the federal statute. When arraigned upon this charge in open court you entered your oral plea of guilty to the charge set forth in the information. The District Attorney has moved the case for sentence, or judgment, at this time, and before pronouncing sentence it is the duty of the Court to ask you if you have any legal ground or cause to show why the judgment of the Court should not be pronounced at this time? Are you ready for sentence?"

Counsel for the defendant replied: "We have no legal ground or cause to show."

"That Tommy Kito, on the 29th day of August, 1946, at the city of Sturgis, Meade County, South Dakota, by force and violence, and by putting in fear one John Kelly, and by assaulting the said John Kelly and putting his life in jeopardy by pointing at him a dangerous weapon, a revolver, a more particular description of said revolver being unknown to informant, did feloniously take from the person and presence of the said John Kelly, a sum of money in excess of Five Thousand Dollars, belonging to, and in the care, custody, control, management and possession of Bear Butte Valley Bank, in the said City of Sturgis.

"George Philip
United States Attorney"

3. "In the District Court of the United States, District of South Dakota, Western Division.

"United States of America,
　　　　　　　　　Plaintiff,
　　vs.
Tommy Kito,
　　　　　　　　　Defendant.

Crim. No. 3115 W. D.
Waiver Rule 7(b)
12 U.S.C., Sec. 588b

"Tommy Kito, defendant, who is accused of violating the Bank Robbery Statute, being advised of the nature of the charge and of his rights, in open court waives prosecution by indictment, and consents that he may be prosecuted by information.

"Tommy Keto
Defendant
W. Ward Wyman
Counsel for Defendant."

Upon being asked by the court if there were any mitigating circumstances, defendant's counsel stated that the defendant claimed that he was drunk at the time of the robbery, and further stated that $5,110.00 of the bank's money had been taken from the defendant at the time of his arrest. The District Court, after expressing the view that neither the defendant's claimed intoxication nor involuntary restitution of funds stolen would justify leniency, sentenced him to imprisonment for twenty-five years.

The defendant's motion, under § 2255, Title 28 U.S.C.A., to vacate his sentence was filed March 31, 1950. A hearing was thereafter had and briefs were submitted. In a letter to counsel dated August 15, 1950, the District Judge stated his conclusion relative to the motion as follows:

"When the information is attacked for the first time by a motion to vacate the sentence, more than three years after the sentence was pronounced, under the facts and circumstances obtaining in this case, I feel as stated in Kramer v. U. S., 9 Cir., 166 F. 2d 515, 519.

" '[That] the indictment should be sustained if the necessary facts could be drawn by reasonable inference from its allegations.'

"While the question is by no means free from doubt, I am convinced that under the facts and circumstances in this case, coupled with the fact that the petitioner has waited almost four years after sentence was pronounced before raising the question, that the ends of justice would not be served by granting petitioner's motion, based as it is on painfully technical grounds."

A formal order denying the motion was entered August 21, 1950, which contains the following language:

"After a careful consideration of the entire record, the briefs submitted by respective counsel, and from my own knowledge and recollection of the proceedings at the time of arraignment and plea as well as at the time of sentence, I have concluded that the failure of the Information to allege the fact, admittedly known by petitioner at the time of arraignment and plea, that the

Bear Butte Valley Bank was a bank within the purview of Section 588a, Title 12, United States Code, is not sufficient to warrant vacating and setting aside judgment and sentence after an elapse of almost four years from the date said sentence was pronounced; now, therefore, it is hereby

"Ordered that the Motion to Vacate Judgment and Sentence of said petitioner, Tommy Keto, be and the same hereby, is denied."

This Court has recently been confronted with several cases in which a federal prisoner has attacked collaterally a sentence, either by habeas corpus or motion to vacate, upon the ground that the indictment or information upon which the sentence was based was so defective as to deprive the court of jurisdiction to impose the sentence. Such cases have usually been decided adversely to the prisoner upon the ground that the defects relied upon to invalidate the sentence were formal rather than substantial, that no prejudice to the defendant had been shown, and that the attack came too late. See United States v. Bent, 8 Cir., 175 F.2d 397, certiorari denied 338 U.S. 829, 70 S.Ct. 79, rehearing denied 338 U.S. 896, 70 S.Ct. 238; Thomas v. United States, 8 Cir., 188 F.2d 6. It seems advisable to state as definitely as possible the rule which precludes a defendant, after conviction, from attacking collaterally the sufficiency of an indictment or information.

The general rule is that, after conviction, a sentence is not open to collateral attack on the ground that the information or indictment upon which it was based was defective. A motion to vacate a judgment, under 28 U.S.C.A. § 2255, is a collateral attack upon the judgment, and only such grounds may be urged as would be available in habeas corpus proceedings. United States v. Gallagher, 3 Cir., 183 F.2d 342, 344. A judgment in a criminal case which is invulnerable to attack by habeas corpus is equally invulnerable on motion to vacate the judgment.

In Ex parte Watkins, 3 Pet. 191, 7 L.Ed. 650, a prisoner who had been convicted in the District of Columbia, applied to the Supreme Court for habeas corpus on the ground that the indictment under which he

had been sentenced by the Circuit Court of the District charged no offense for which he was punishable. Mr. Chief Justice Marshal, in delivering the opinion of the court, said at page 206 of 3 Pet.: "The cases are numerous, which decide, that the judgments of a court of record, having general jurisdiction of the subject, although erroneous, are binding, until reversed. It is universally understood, that the judgments of the courts of the United States, although their jurisdiction be not shown in the pleadings, are yet binding on all the world; and that this apparent want of jurisdiction can avail the party only on a writ of error. This acknowledged principle seems to us, to settle the question now before the court. The judgment of the circuit court, in a criminal case, is, of itself, evidence of its own legality, and requires for its support, no inspection of the indictment on which it is founded. The law trusts that court with the whole subject, and has not confided to this court the power of revising its decisions. We cannot usurp that power, by the instrumentality of the writ of habeas corpus. The judgment informs us, that the commitment is legal, and with that information, it is our duty to be satisfied."

In Lamar v. United States, 240 U.S. 60, 36 S.Ct. 255, 60 L.Ed. 526, Mr. Justice Holmes, who delivered the opinion of the court, stated that the question of the sufficiency of an indictment was not a question going to the jurisdiction of the court, but one relating to the merits of the case. He said at pages 64–65 of 240 U.S., at page 256 of 36 S.Ct.: "* * * Jurisdiction is a matter of power, and covers wrong as well as right decisions. Fauntleroy v. Lum, 210 U. S. 230, 234, 235, 28 S.Ct. 641, 52 L.Ed. 1039, 1041; Burnet v. Desmornes y Alvarez, 226 U.S. 145, 147, 33 S.Ct. 63, 57 L.Ed. 159, 160. There may be instances in which it is hard to say whether a law goes to the power or only to the duty of the court; but the argument is pressed too far. A decision that a patent is bad, either on the facts or on the law, is as binding as one that it is good. The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716, 717. And nothing can be clearer than that the district court, which has jurisdiction of all crimes cognizable under the authority of the United States (Judicial Code of March 3, 1911, chap. 231, § 24, second), acts equally within its jurisdiction whether it decides a man to be guilty or innocent under the criminal law, and whether its decision is right or wrong. The objection that the indictment does not charge a crime against the United States goes only to the merits of the case." See, also, United States v. Williams, 341 U.S. 58, 65–66, 71 S.Ct. 595, 599.

In Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982, a prisoner sought, by habeas corpus, to invalidate a judgment upon the ground that the District Court had erroneously deprived him of a meritorious defense upon his trial. He had not appealed from the judgment. The Supreme Court held that the judgment was not open to collateral attack, saying, at page 182 of 332 U. S., at page 1593 of 67 S.Ct.: "* * * If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court."

In his dissenting opinion in that case, Mr. Justice Frankfurter, in tentatively classifying the categories in which habeas corpus has not been regarded as being beyond the power of the federal courts to entertain, said at page 186 of 332 U.S., at page 1595 of 67 S.Ct.: "*Insufficiency of indictments is not open on habeas corpus;* it may be in removal cases, in view of the hardship to the individual and the inadequacy of other remedies." (Italics supplied.)

It cannot be said, however, that there may never be a departure from the rule that an indictment or information is not subject to collateral attack after conviction.

In United States v. Pridgeon, 153 U.S. 48, 14 S.Ct. 746, 38 L.Ed. 631, a judgment was attacked by habeas corpus upon the ground that the indictment was defective. The Supreme Court stated that, while the indictment might have been found defective

upon demurrer or writ of error, the defects were not such as to justify a ruling that it was open to collateral attack after conviction. The court said at pages 59–60 of 153 U.S., at page 750 of 14 S.Ct.: "* * * The habeas corpus proceeding being a collateral attack of a civil nature, it must clearly and affirmatively appear that the indictment charged an offense of which the court had no jurisdiction, so that its sentence was void."

The limitation on the general rule is stated in the case of Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455. In that case Bowen had been convicted in 1930 of murder committed on the Government Reservation, in Georgia, known as the Chickamauga and Chattanooga National Park. In 1937 he petitioned for habeas corpus, alleging that the indictment was void, and that no legal judgment could be based upon it, since it failed to show jurisdiction, the United States not having jurisdiction of offenses committed in the Park. In referring to the contention of the respondent that the judgment was not open to collateral attack upon the grounds asserted by Bowen, Mr. Chief Justice Hughes said at pages 26–27 of 306 U.S., at page 446 of 59 S.Ct.: "* * * The rule requiring resort to appellate procedure when the trial court has determined its own jurisdiction of an offense is not a rule denying the power to issue a writ of habeas corpus when it appears that nevertheless the trial court was without jurisdiction. The rule is not one defining power but one which relates to the appropriate exercise of power. It has special application where there are essential questions of fact determinable by the trial Court. Rodman v. Pothier, supra [264 U.S. 399, 44 S.Ct. 360, 68 L.Ed. 759]. It is applicable also to the determination in ordinary cases of disputed matters of law whether they relate to the sufficiency of the indictment or to the validity of the statute on which the charge is based. Id.; Glasgow v. Moyer, supra, [225 U.S. 420, 32 S.Ct. 753, 56 L.Ed. 1147]; Henry v. Henkel, supra [235 U.S. 219, 35 S.Ct. 54, 59 L.Ed. 203]. But it is equally true that the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent. Among these exceptional circumstances are those indicating a conflict between state and federal authorities on a question of law involving concerns of large importance affecting their respective jurisdictions. In re Lincoln, 202 U.S. 178, 182, 183, 26 S.Ct. 602, 603, 604, 50 L.Ed. 984; Henry v. Henkel, supra, [at] pages 228, 229, 35 S.Ct. [54] pages 56, 57."

The Supreme Court in the Bowen case held that, because of the uncertainty as to whether offenses committed in the Government Park were triable by the state court or the federal court, the indictment and judgment were subject to collateral attack. The Court concluded, however, that the Park was under the exclusive jurisdiction of the United States and that the judgment was valid.

█ The rule, then, is that the sufficiency of an indictment or information is not open to collateral attack after conviction unless it appears that the circumstances are exceptional, that the questions raised are of "large importance", that the need for the remedy sought is apparent, and that the offense charged was one of which the sentencing court manifestly had no jurisdiction. The instant case is obviously not such a case.

The orderly administration of criminal justice demands that a defendant who is dissatisfied with the form or substance of an indictment or information filed against him shall make that known to the trial court at or before the time when sentence is imposed, and shall appeal from any judgment which he contends is based upon a defective indictment or information. It would create an intolerable situation if defendants, after conviction, could defer their attacks upon indictments or informations until witnesses had disappeared, statutes of limitation had run, and those charged with the duty of prosecution had died, been replaced, or had lost interest in the cases.

█ The information upon which the defendant's sentence was based did not affirmatively show that the offense charged was one of which the District Court had no jurisdiction. The defect in the information

went to the merits of the case and not to the court's jurisdiction. The information was not subject to collateral attack on motion to vacate the sentence.

The order appealed from is affirmed.