**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William B. PRINCE, Jr.,**
**Defendant–Appellant.**

**No. 87–6008**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1989.
Order on Denial of Rehearing and
Rehearing En Banc March 2, 1989.

William B. Prince, Jr., Bryan, Tex., pro se.

Frances H. Stacy, Thomas Scott Woodward, Asst. U.S. Attys., Houston, Tex., for U.S.

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant William B. Prince, Jr. (Prince) was convicted, on his plea of guilty, of conspiracy to defraud the United States or its agencies in violation of 18 U.S.C. § 371, embezzlement of United States funds in violation of 18 U.S.C. § 641, and failure to file a 1984 income tax return in violation of 26 U.S.C. § 7203. He brought this 28 U.S.C. § 2255 habeas corpus petition to challenge several aspects of his conviction and sentencing, including the sufficiency of the charging instrument, the court's failure to inform him that he might be ordered to pay restitution, the court's failure to ascertain that his guilty plea was voluntary, the sentence to consecutive rather than concurrent prison terms, discrepancies between the judgment and the criminal information, and failure to comply with various specific requirements of Fed.R. Crim.P. 32 concerning the sentencing hearing. For reasons stated below, we affirm the district court's denial of appellant's requested relief.

## Facts and Proceedings Below

Prince was charged in a three-count information. Count one charged that Prince, from March 1984 to December 1985, while he was comptroller for and supervised the finance department of the Houston–Galveston Area Council (HGAC), "a voluntary association of local governments and locally elected officials" which "received federal funds from federal agencies or federally funded state agencies," willfully "conspire[d]" with others "to defraud the United States, and any agency thereof participating in the funding of the" HGAC, and as "a part of said conspiracy" wrote some $338,000 worth of checks "from an HGAC account" to a dummy entity, which in turn passed some $264,000 of these funds over to Prince personally, in violation of section 371. Count two alleged that during the period March 1984 through November 1985 Prince "willfully and knowingly did steal and convert to his own use a thing of value of the United States and any department or agency thereof, to wit: ... $1,111,244.00 of federal funds which had been allocated by federal agencies or federally funded state agencies for distribution by the ... [HGAC] to various programs under its management," in violation of section 641. Count three charged that Prince willfully failed to file his 1984 income tax return, contrary to section 7203. Prince, who was represented by retained counsel throughout, waived indictment and pleaded guilty to all counts pursuant to a plea agreement under the terms of which he would not be otherwise or further charged as to these matters. Prince's waiver of indictment and guilty plea were accepted on September 15, 1986, following a Fed.R.Crim.P. 11 hearing. On October 27, 1986, a sentencing hearing was had and Prince was sentenced to four years on the conspiracy count (count one)

and seven years on the theft of federal funds count (count two), such sentence to be consecutive to that on count one. Imposition of sentence on the income tax count (count three) was suspended for a probationary period of five years commencing after completion of the sentence on counts one and two. Prince was also ordered to make restitution to the HGAC in the amount of $1,022,166.49, payment of which was a condition of parole. On October 31, Prince, through his original trial counsel, filed a motion to postpone his voluntary surrender until "after" January 1, 1987, and this motion was denied on November 4, 1986. On December 10, 1987, the district court entered an order directing Prince to surrender to the Federal Prison Camp, Big Spring, Texas, on January 2, 1987, and Prince timely so surrendered. The judgment and commitment order was signed November 24, 1986.

On February 24, 1987, Prince, through new retained counsel, filed a motion to reduce or modify sentence pursuant to Fed. R.Crim.P. 35, and the district court denied the motion on March 5, 1987. Instead of directly appealing this denial, on April 6, 1987, Prince, through the same counsel who filed the February motion, requested the court to reconsider its ruling on the Rule 35 motion. On May 5, 1987, the district court ordered Prince to file a memorandum supporting his request within thirty days and ordered the government to file a response within thirty days of Prince's filing. Rather than filing the memorandum, on July 29, 1987, Prince filed the present *pro se* motion under section 2255 to vacate, set aside, or correct his sentence. The government opposed the motion, and the district court denied it, without a hearing, in a brief August 26 order. Prince filed a timely appeal, and we granted his motion to proceed *in forma pauperis.*

## Discussion

*Availability of relief under section 2255*

The government intially submits, as it did below, two general counters to Prince's complaint. First, it is urged that the matters Prince raises are not within the scope of section 2255. In this connection, it is well settled that section 2255 does not reach alleged errors which are not of constitutional or jurisdictional magnitude and which could have been reached by a direct appeal. *United States v. Capua,* 656 F.2d 1033, 1037-38 (5th Cir.1981).

Secondly, the government contends that Prince's claims are barred under the "cause and prejudice" standard of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977), because he did not appeal his conviction. Prince claims there is no bar because his failure to appeal was not a deliberate by-pass of his claims. The law in this connection is not well settled.

At the Supreme Court level, cases such as *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 1070-71 n. 3, 22 L.Ed.2d 227 (1969), support the deliberate by-pass standard, while *Sykes, United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), and *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2644-48, 91 L.Ed.2d 397 (1986), point to the cause and prejudice test. None of these cases involve both section 2255 and a total failure to take a direct appeal of the original conviction. Our own cases are inconsistent. Pointing to cause and prejudice are *Sincox v. United States,* 571 F.2d 876, 879 (5th Cir.1978) (total failure to take direct appeal; section 2255; relying on *Sykes* as effecting a change in the law); *Huffman v. Wainwright,* 651 F.2d 347 (5th Cir.1981) (section 2254; failure to raise issue where direct appeal taken); *Evans v. Maggio,* 557 F.2d 430 (5th Cir.1977) (same); *Clark v. State,* 788 F.2d 309 (5th Cir.1986) (total failure to take direct appeal; section 2254; relies on *Sincox*); and *Meeks v. Cabana,* 845 F.2d 1319, 1323 (5th Cir.1988) (same). A host of our pre-*Sykes* cases support the deliberate by-pass standard. *See, e.g., McKnight v. United States,* 507 F.2d 1034 (5th Cir.1975) (withdrawn direct appeal; section 2255). Our post-*Sykes* cases pointing in the same direction are *Coco v. United States,* 569 F.2d 367, 370-71 (5th Cir.1978) (failure to raise issue when direct appeal taken; sec-

tion 2255); *Thor v. United States*, 574 F.2d 215, 219 (5th Cir.1978) (same); *Buckelew v. United States*, 575 F.2d 515, 519 (5th Cir. 1978) (same); *United States v. Capua*, 656 F.2d at 1037 (total failure to take direct appeal; section 2255); *United States v. McCollom*, 664 F.2d 56, 59 (5th Cir.1981) (failure to raise issue when direct appeal taken; section 2255); *United States v. Caceres*, 745 F.2d 935, 936 n. 2 (5th Cir.1984) (same); and *United States v. Smith*, 844 F.2d 203, 206–07 (5th Cir.1988) (total failure to take direct appeal; section 2255).[1]

We decline to resolve this conflict in our cases, because even if Prince's failure to take a direct appeal did not bar consideration of his complaints, his present appeal presents no reversible error in the dismissal of his section 2255 petition.

*Sufficiency of the information*

■ Prince claims that neither count one nor count two of the information state an offense. This is a claim which is cognizable under section 2255, at least if the information is so deficient as to deprive the convicting court of jurisdiction. *See United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979); *Capua*, 656 F.2d at 1037.

As to count one, Prince, relying on *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), maintains that the HGAC is not the United States or an agency thereof, and that hence a conspiracy to defraud the HGAC is not a violation of section 371. Indeed, the *Tanner* Court did rule that a nongovernmental entity, "as the recipient of federal financial assistance and the subject of federal supervision, may [not] itself be treated as 'the United States' for purposes of § 371." 107 S.Ct. at 2752. However, the Court also noted that a long line of cases has held that the scope of the section 371 phrase "to defraud ... in any manner or for any purpose" covers not only the appropriation of government property, but also reaches conspiracies entered into for the purpose of

impairing, obstructing, or defeating the lawful function of any governmental department. *Id.* at 2751 (citing *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966), and *Haas v. Henkel*, 216 U.S. 462, 30 S.Ct. 249, 253, 54 L.Ed. 569 (1910)).

The contours of this "impairing government functions" violation of section 371 is somewhat hazy. The *Tanner* Court noted that "a conspiracy to defraud the United States may be effected by the use of third parties." 107 S.Ct. at 2752. The Supreme Court found a violation involving third parties in *Dennis*, in which it upheld the section 371 conviction of union members who defrauded the National Labor Relations Board by filing false non-Communist affidavits in order to obtain Labor Board investigation of the union's employee representation.

■ It is not necessary, however, for us to decide the precise scope of section 371. Unlike this case, the *Tanner* decision was the result of a direct appeal in which the defendant challenged the law on which his conviction was based rather than the sufficiency of the charging instrument. In direct appeals, an indictment passes muster if it includes the elements of the offense, provides adequate notice as to the charge, and provides protection against double jeopardy. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, *reh'g denied*, 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974). When an indictment is challenged for the first time on appeal, only failure to charge an offense may be asserted because all nonjurisdictional defects are waived. *United States v. Campos-Asencio*, 822 F.2d 506, 508 (5th Cir.1987); *cf. United States v. Taylor*, 814 F.2d 172, 174 (5th Cir.), *reh'g denied*, 818 F.2d 865, *cert. denied, Taylor v. United States*, —— U.S. ——, 108 S.Ct. 186, 98 L.Ed.2d 138 (1987) (holding that a voluntary guilty plea waives all nonjurisdictional defects in the proceedings). Generally in

---

1. As to the law in other Circuits, *see Williams v. United States*, 805 F.2d 1301 (7th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987), which notes a split in authority and holds that cause and prejudice is the proper test in section 2255 where there has been no direct appeal. *See also Bontkowski v. United States*, 850 F.2d 306, 311, 313 (7th Cir.1988) (same).

such cases, appellate courts review the indictment liberally in favor of the government, *Campos–Asencio,* 822 F.2d at 508, and it will be held sufficient if "by any reasonable construction" it can be said to charge an offense. *United States v. Trollinger,* 415 F.2d 527, 528 (5th Cir.1969). *Accord United States v. Hart,* 640 F.2d 856, 857–58 (6th Cir.), *cert. denied,* 451 U.S. 992, 101 S.Ct. 2334, 68 L.Ed.2d 853 (1981). As stated in *United States v. Richardson,* 687 F.2d 952, 962 (7th Cir.1982), "[t]he tardier the challenge, the more liberally and aggressively have indictments been construed so as to save them" (citing numerous cases). Thus, when the attack on an indictment is collateral as well as new, as when first raised in a section 2255 habeas petition, the appellate court can consider the challenge only in exceptional circumstances. *Brant v. United States,* 218 F.2d 808, 809 (5th Cir.1955) (*per curiam*). *See also* 1 Wright, *Federal Practice and Procedure, Criminal* § 123 at 355–56. The Eighth Circuit has stated the rule as follows:

"[T]he sufficiency of an indictment or information is not open to collateral attack after conviction unless it appears that the circumstances are exceptional, that the questions raised are of 'large importance,' that the need for the remedy sought is apparent, and that the offense charged was one of which the sentencing court manifestly had no jurisdiction." *Merrill v. United States,* 599 F.2d 240, 242 (8th Cir.1979) (quoting *Keto v. United States,* 189 F.2d 247, 251 (8th Cir.1951)).[2]

■ Under this standard, count one is sufficient. It alleges that appellant conspired "to defraud *the United States, and any agency thereof participating* in the funding of the Houston–Galveston Area Council." (Emphasis added.) It does not allege that the HGAC is a federal agency, that the HGAC stands in the shoes of a federal agency for section 371 purposes simply because it receives federal funds, or even that Prince defrauded the HGAC. Thus, the charge as set out in count one is not precluded by the Supreme Court's holding in *Tanner,* and under our loose standard of reviewing collateral attacks on indictments, we find that it at least arguably asserts that Prince conspired to impair lawful federal government functions. Moreover, the fact that funds taken pursuant to the conspiracy were in "an HGAC account" does not of itself necessarily preclude those funds from being monies of the United States or one of its agencies, *see United States v. Smith,* 596 F.2d 662 (5th Cir. 1979), so that a conspiracy to take such funds could also be a conspiracy to defraud the United States in that sense as well.

We also observe that the charging instrument against Prince is an information rather than an indictment; therefore, the prosecution could have easily amended it without sending it back to the grand jury had the appellant pointed out any objections at the time. 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.2 (West 1984). This may be precisely why Prince did not point out the alleged deficiency.

■ The same considerations apply even more strongly to sustain count two. It plainly alleges that Price did steal "a thing of value of the United States ... or any agency thereof, to wit: ... $1,111,244.00 of federal funds." This sufficiently states that the monies stolen are those of the United States or any agency thereof within section 641. The fact that the information also alleges that these funds "had been allocated by federal agencies ... for distribution by" HGAC "to various programs under its management" does not *necessarily* mean that such funds had been transferred to the exclusive ownership and control of HGAC so as to no longer be monies of the United States or its agency. *See United States v. Smith,* 596 F.2d 662 (5th Cir.1979). Under the above-referenced standard for review of a charging instrument attacked for the first time in collat-

---

**2.** Whether this approach would be proper in instances of ineffective assistance of counsel or a marked and clear change in the law, we need not determine. Prince has made no claim of ineffective assistance of counsel and we do not regard *Tanner* as effecting a marked and clear change in the law.

eral proceedings, count two is likewise sustained. Prince's complaint that it does not state a value in excess of $100 is frivolous.

*Guilty plea*

█ Prince asserts that the district court violated the provisions of Fed.R.Crim.P. 11(c)(1) by failing to advise him that he might be ordered to pay restitution in consequence of his guilty plea. This claimed failure to comply with the formal requirements of Rule 11 cannot be considered in a collateral attack under section 2255 because it is neither a constitutional nor a jurisdictional deficiency, and Prince has failed to show that the alleged error "resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979). Finally, Prince has not asserted that he was unaware of the possibility that the court would require restitution, or that if he had been properly advised by the district court he would not have pleaded guilty. *See id.; United States v. Patterson,* 739 F.2d 191, 194 (5th Cir.1984); *United States v. Saldana,* 731 F.2d 1192, 1193 (5th Cir. 1984). The record shows in fact that Prince was made aware of this possibility by the government's sentencing memorandum mailed to his counsel on October 6, 1986. And, he was asked by the court at the October 27, 1986 sentencing hearing if he wished to persist in his plea of guilty and he stated that he did.

█ Prince next asserts that the district court erred because it failed to ask "more than the 'boilerplate' questions regarding [his] voluntary plea." However, his brief on appeal does not elaborate on this purely conclusory assertion. Prince's brief does not assert that his guilty plea was, in fact, involuntary. Nor has he alleged, here or below, that he was ignorant of the elements of the offenses charged and would not have pleaded guilty had he known them, or that he received inadequate assistance of counsel. The record reflects that Prince was a mature, well-educated, intelligent man. He read the indictment before the Rule 11 hearing, and it was explained to him, albeit briefly and somewhat conclusorily, and read aloud in full at the Rule 11 hearing. Prince stated, under questioning by the court, that he understood the charges, and this was confirmed by his counsel, with whom the Rule 11 hearing and the rest of the record reflect that Prince had amply consulted. The Rule 11 hearing likewise established the voluntary nature of the plea. Prince alleged below that the plea was coerced because he was threatened with other charges. This claim is not asserted on appeal, and is hence waived; in any event, such a "threat" does not render a plea involuntary. Prince also alleged below that the government broke its plea bargain by making a sentencing recommendation; however, this claim likewise has not been raised on appeal and is waived; moreover, it is refuted by the record, which shows the only consideration of the plea bargain was not to bring other charges, and by the fact that Prince, before sentencing, was aware of the government's position and elected to persist in his plea. The challenges made by Prince to his plea on this appeal do not present any reversible error. *See United States v. Smith,* 844 F.2d 203, 208–09 (5th Cir.1988).

*Form of judgment and commitment order*

█ Next Prince claims that the judgment and commitment order state a different charge under count one from that specified in the information, and state different sentences for counts two and three from those ordered at the sentencing hearing. An examination of the record clearly shows, however, that these are merely clerical errors, and Prince has not shown that he suffered any prejudice from them. To eliminate any question, we order the judgment and commitment order reformed by striking therefrom "contrary to Title 18, United States Code, Section 641," and "embezzlement" and by substituting therein in lieu of "embezzlement" the words "stealing and converting," as in the information.

*Sentence and sentencing*

█ Prince asserts that it was improper for the court to impose consecutive sentences for violations under counts one

and two, 18 U.S.C. §§ 371 and 641 respectively. Separate punishments may be imposed for multiple offenses arising in the course of a single transaction only when each statutory provision requires proof of an additional element that the other does not. Because sections 371, a conspiracy offense, and 641, a substantive offense, require different elements of proof, the district court was free to impose consecutive sentences on him. *See Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 1290, 43 L.Ed.2d 616 (1975).

Prince next asserts that the district court violated Fed.R.Crim.P. 32(a)(1)(A), (c)(3)(A), and (c)(3)(D), concerning the disclosure and examination of the contents of the presentence investigation report. Violations of Rule 32 may only be raised on collateral attack if the claim could not have been raised on direct appeal. *Smith,* 844 F.2d at 207. A Rule 32 violation can be addressed in a direct appeal or on a Rule 35 motion to correct a sentence. *Id.* Although Prince did move to correct his sentence, he did not raise this issue in that motion. Thus he failed to bring his claim within the narrow ambit of section 2255 review. *Id.*

Finally, Prince raises, for the first time in his reply brief, that he was not given the right of allocution at his sentencing hearing as required by Fed.R.Crim.P. 32(c)(3)(A). This Court will not consider a new claim raised for the first time in an appellate reply brief. *United States v. Mejia,* 844 F.2d 209, 214 n. 1 (5th Cir.1988). We are particularly comfortable with this outcome because Prince's attorney had prepared a lengthy sentencing memorandum and presented a lengthy argument for his client at the sentencing hearing. Neither appellant nor his counsel ever notified the district court that Prince wanted to speak in his own behalf, nor did they object at the hearing when the district court failed to explicitly ask Prince whether he wanted to speak. No violation of constitutional dimensions is apparent.

### Conclusion

Prince's appeal presents no claim requiring reversal of the district court's denial of his section 2255 petition. Consequently, the judgment is affirmed. The cause is remanded solely to make the above-indicated clerical corrections in the judgment and commitment order.

Judgment AFFIRMED; cause REMANDED for clerical correction.

### ON SUGGESTION FOR REHEARING EN BANC

PER CURIAM:

Treating the suggestion for rehearing en banc as a petition for panel rehearing, it is ordered that the petition for panel rehearing is DENIED. The panel notes that *United States v. Corn,* 836 F.2d 889 (5th Cir. 1988), relied on by Prince, was a direct appeal, while the present case is a collateral attack. No member of the panel nor Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for rehearing en banc is DENIED.