IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50470
Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD M. ANCIRA,

Defendant-Appellant.


_____

Appeal from the United States District Court for the
Western District of Texas
(A-95-CA-225)
_____

March 25, 1996

Before GARWOOD, JONES and DeMOSS Circuit Judges.[*]

GARWOOD, Circuit Judge:

Defendant-appellant Richard M. Ancira (Ancira) pleaded guilty
to the charge of possession with intent to distribute more than 100
grams of heroin in violation of 21 U.S.C. § 841(a)(1).  His
conviction and sentence were affirmed on appeal.  Ancira presently
appeals the district court's denial of his motion to vacate, set
aside or correct his sentence, filed pursuant to 28 U.S.C. § 2255.

_____

[*]    Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

We affirm.

## Facts and Proceedings Below

Ancira was arrested on December 11, 1990, in Austin, Texas. A confidential informant alerted the Austin Police Department that Ancira was a heroin dealer who had previously sold heroin to the informant. After giving the police a description of Ancira and his vehicle, the informant contacted Ancira and arranged to purchase an eighth of one ounce of heroin. The police, who had already placed Ancira's vehicle under surveillance based on the informant's description, observed Ancira leave the residence from which he had arranged this meeting with the informant. When Ancira arrived at the designated meeting place, and the informant confirmed Ancira's identity, the police determined that they had probable cause and arrested Ancira. Ancira was searched incident to his arrest, and police officers found thirty-three balloons of heroin and $1,680 in cash. Ancira then disclosed the location of additional heroin at his residence, and, after obtaining a search warrant based on this information, the police uncovered another 487 balloons of heroin. The total amount of heroin seized incident to Ancira's arrest and at his residence was 108.89 grams.

Ancira was charged with conspiracy to possess with intent to distribute more than 100 grams of heroin (count one), in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with intent to

2

distribute more than 100 grams of heroin (count two), in violation of 21 U.S.C. § 841(a)(1). He complained that the police did not have probable cause to arrest him, but the district court denied his motion to suppress the evidence obtained incident to his arrest. Thereafter, Ancira entered into a conditional plea agreement whereby he would plead guilty to the second count of his indictment while preserving his right to appeal the district court's denial of his motion to suppress. The district court sentenced Ancira to a 240-month term of imprisonment, a 5-year term of supervised release, and imposed a $50 mandatory assessment.

Ancira appealed his conviction and sentence to this Court, and we affirmed, *see United States v. Ancira*, No. 91-8503 (5th Cir. March 19, 1992) (unpublished), holding that the district court did not err (1) in denying Ancira's motion to suppress, and (2) in considering Ancira's prior state convictions in deciding to enhance his sentence as a "career offender" under the sentencing guidelines. *Id.*[1]

Ancira subsequently, on April 20, 1995, filed in the district court the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. In that motion, Ancira claimed that he was denied effective assistance of counsel,[2] that the

---

[1] In his direct appeal to this Court, Ancira challenged his conviction and sentence in only these two respects.

[2] Specifically, Ancira asserted that his counsel's performance was deficient in that counsel: (1) failed to properly investigate

3

district court violated Rule 11 during his rearraignment, and that the government breached the plea agreement. Ancira also raised several issues relating to application of the sentencing guidelines and the statutory requirement that notice be given to a defendant of the government's intent to seek enhancement of the defendant's sentence prior to the defendant's entry of a guilty plea. The district court denied Ancira's motion. Ancira now appeals.

## Discussion

It is well-settled that a collateral challenge to a conviction or sentence "may not do service for an appeal." *United States v. Frady*, 102 S.Ct. 1584, 1593, *reh'g denied,* 102 S.Ct. 2287 (1982); *see also United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).

> "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal. . . . [T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 102 S.Ct. at 1593-94 (footnote omitted).

It is also clear that an appellate court will not consider a section 2255 claim raised for the first time on appeal. *United*

Ancira's prior convictions and challenge the application of the sentencing guidelines' "career offender" provisions; (2) failed to investigate and raise the issue of Ancira's mental competence; (3) failed to request a downward departure based on Ancira's mental state; (4) failed to request a downward departure for Ancira's acceptance of responsibility after the "career offender" provisions were determined to be applicable; and (5) failed to adequately inform Ancira of the possible (sentencing) repercussions of his guilty plea.

4

*States v. McKnight*, 693 F.2d 476, 476 (5th Cir. 1982). Finally, this Court has observed that a section 2255 petitioner may bring a collateral challenge only upon "issues of constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)(citation omitted), *cert. denied*, 112 S.Ct. 978 (1992). If a petitioner presents an error that is not of such magnitude, then he must show that the error "could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Walker*, 68 F.3d at 934 (citation omitted); *see also Hill v. United States*, 82 S.Ct. 468, 471, *reh'g denied*, 82 S.Ct. 640 (1962) (section 2255 relief is available only if the alleged error is a "fundamental defect which inherently results in a complete miscarriage of justice . . . [and] present[s] 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent'") (citation omitted).

In reviewing a district court's denial of a section 2255 motion, this Court reviews the district court's factual findings for clear error, and questions of law are reviewed *de novo*. *United States v. Gipson*, 985 F.2d 212, 214 (5th Cir. 1993).

I.   Ineffective Assistance of Counsel

Ancira contends that he was denied effective assistance of counsel in several respects relating to his conviction and sentence. To obtain section 2255 relief based on a claim of ineffective assistance of counsel, a petitioner must show not only

5

that his attorney's performance was deficient, but also that the deficiency prejudiced the defense. *United States v. Smith*, 915 F.2d 959, 963 (5th Cir. 1990). In order to demonstrate such a deficiency, the petitioner must prove that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 104 S.Ct. 2052, 2064, *reh'g denied,* 104 S.Ct. 3562 (1984). To prove that the deficiency prejudiced the defense, the petitioner must demonstrate a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. This two-part analysis applies equally to claims of ineffective assistance of counsel arising out of the plea process. *Hill v. Lockhart*, 106 S.Ct. 366, 370 (1985). Accordingly, the petitioner must establish a reasonable probability that, but for counsel's alleged failures and misrepresentations, the petitioner "would not have pleaded guilty and would have insisted on going to trial." *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987) (citation omitted).

> A.   Failure to Properly Investigate Ancira's Prior
>      Convictions and Challenge the Application of the
>      Sentencing Guidelines' "Career Offender" Provisions

First, Ancira contends that counsel failed to investigate the prior convictions which were used to enhance his sentence. Ancira suggests that, had counsel investigated these convictions, it would have been plain that the convictions should have been consolidated and treated as a single conviction pursuant to U.S.S.G. §

6

4A1.2(a)(2); such a consolidation would have prohibited application of the enhancement provisions of U.S.S.G. § 4B1.1. Ancira ignores the fact that his lawyer raised this issue at sentencing, however, which clearly collapses this allegation.

Second, Ancira argues that counsel failed to challenge the application of the sentencing guidelines' "career offender" provisions. This issue, however, was addressed in Ancira's direct appeal. We found that Ancira had four prior felony convictions upon which the district court properly based its decision to apply the "career offender" provisions of U.S.S.G. § 4B1.1. We further held that Ancira had failed to provide any evidence that his prior convictions had been consolidated, observing that sentences which run concurrently and are imposed on the same day are not required to be consolidated for guideline purposes. *United States v. Ancira*, No. 91-8503 at 8-9 (5th Cir. March 19, 1992) (unpublished) (citation omitted). It is well-settled that an issue which has been raised and ruled upon adversely to a defendant on direct appeal may not be relitigated in the context of a section 2255 motion. *United States v. McCollom*, 664 F.2d 56, 59 (5th Cir. 1981), *cert. denied*, 102 S.Ct. 1989 (1982).[3]

---

[3]   Furthermore, even if this Court were to address Ancira's contention that his prior convictions should be consolidated, there is no support for a finding that all of his prior convictions should be treated as a single offense. Ancira was convicted of two (controlled substance) felonies that occurred in February 1988, and two (controlled substance) felonies occurring in July 1988. Ancira pleaded guilty to and was sentenced on the February charges in

7

B.   Failure to Investigate and Raise the Issue of Mental Incompetence

Ancira contends that he was mentally incompetent to plead guilty, a fact which counsel should have discovered and raised before the trial court.  Specifically, Ancira argues that counsel should have petitioned the district court for a downward departure based on Ancira's "diminished capacity"——due to his documented Post Traumatic Stress Disorder (PTSD)[4]—pursuant to U.S.S.G. § 5K2.13.

In considering whether counsel was ineffective in the sentencing phase following a plea, "[A] court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been *significantly* less harsh."  *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993) (footnote omitted)(emphasis in original).

---

March 1988, and was convicted and sentenced on the July charges in October 1988.   Under even the broadest construction of the consolidation provisions of U.S.S.G. § 4A1.2(a)(2), the "March" and "October" convictions must be viewed as separate for enhancement purposes.  *United States v. Ancira*, No. 91-8503 at 8-10 (5th Cir. March 19, 1992) (unpublished).   Therefore, under the "career offender" provisions of U.S.S.G. § 4B1.1, Ancira has "at least two prior felony convictions of either a crime of violence or a controlled substance offense", and was properly sentenced as a "career offender".

[4]     Ancira's presentence report (PSR) of July 19, 1991, asserts that Ancira has been diagnosed as suffering from PTSD, a condition which causes Ancira to experience "panic attacks," severe anxiety, hallucinations, and significant fluctuations in his blood pressure. PSR ¶ 38.  The PSR further indicates that Ancira failed to show up at the inpatient psychological treatment facility where he was to have received medical assistance with his psychological and drug problems; his failure to report to this treatment facility constituted a violation of his parole.  *Id.*

8

U.S.S.G. § 5K2.13 provides that, "[A] lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense . . ." This Court has clarified that, while a defendant's reduced mental capacity need not be the sole cause of the offense, it must be a contributing cause. *See United States v. Soliman*, 954 F.2d 1012, 1014 (5th Cir. 1992). In the present case, Ancira fails to demonstrate how his condition contributed in any way to his commission of the offense of conviction—possession of heroin *with the intent to distribute*. Therefore, there exists no reasonable probability that, had counsel urged the trial court to make a (section 5K2.13) downward departure reflecting Ancira's "diminished capacity," the trial court would have so departed from the applicable guideline range and imposed a significantly less harsh sentence than was actually imposed.[5]

C.   Failure to Request a Downward Departure for Ancira's Acceptance of Responsibility

Ancira contends that when the district court enhanced his offense level pursuant to the "career offender" provisions of

_____

[5]   Ancira has also suggested that he was deprived of a fair trial because counsel failed to petition the district court to hold a competency hearing. In light of the fact that the district court asked Ancira at his rearraignment whether he had ever suffered from any mental or physical impairments "that might affect [his] memory or judgment or have any effect on [his] understanding of these proceedings?"—and Ancira responded that he had not—the district court properly viewed Ancira as competent. Therefore, even if counsel's failure to petition the court for a competency hearing were otherwise cognizable, the district court's inquiry into this matter rendered any impact of such a failure harmless.

U.S.S.G. § 4B1.1, counsel should have sought the two-level reduction to which Ancira was allegedly entitled under U.S.S.G. § 3E1.1 for acceptance of responsibility. It appears from the PSR, however, that Ancira did in fact receive this two-level reduction under section 3E1.1, as the PSR, which was adopted by the district court for sentencing purposes, implicitly made this reduction. As enhanced, the statutory maximum for Ancira's offense of conviction was forty years. 21 U.S.C. § 841(b)(1)(B). The offense level corresponding to this maximum sentence under section 4B1.1 is thirty-four. The PSR, however, assigned Ancira an offense level of thirty-two. Considering that the PSR reduced Ancira's *pre-enhancement* base offense level by two levels "for Acceptance of Responsibility", it appears that the PSR simply adjusted Ancira's *enhanced* offense level accordingly. *See* PSR ¶ 15. Therefore, Ancira has no claim that counsel's performance was deficient, or that there was prejudice, in this regard.

    D.    Failure to Adequately Inform Ancira of the Possible Repercussions of His Guilty Plea

Ancira further contends that his guilty plea was made involuntarily, as it was the product of counsel's incorrect and misleading advice. Aside from making this bald assertion, however, Ancira makes no argument and advances no facts in support of this contention:

10

> "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (footnote omitted).[6]

In fact, counsel advised Ancira in a March 4, 1991, letter discussing the plea agreement that, "Neither I nor anyone else for that matter, can state with specific accuracy what the sentencing authorities will recommend to the Court."

Furthermore, Ancira testified in open court that he had not been threatened, forced, or coerced into pleading guilty, nor had anyone promised him anything other than what was contained in the written plea agreement that he and his lawyer had signed. Accordingly, the district court found that Ancira's plea was freely and voluntarily made, concluding that Ancira had received an adequate opportunity to advise the court of any reservations or misunderstandings he might have had regarding the plea agreement. Ancira offers no argument or evidence to overcome the "formidable barrier" to challenging these findings by the district court. *See*

---

[6] Ancira also asserts for the first time on appeal that counsel failed to raise the issue that Ancira was entitled to notice—prior to entering his plea—that the government intended to seek enhancement pursuant to the "career offender" provisions of U.S.S.G. § 4B1.1. This assertion, unaccompanied by *any* support or explanation, likewise has no probative value in the present context.

11

*Blackledge v. Allison*, 97 S.Ct. 1621, 1629 (1977).[7]

II. Breach of Plea Agreement

Ancira contends that the government breached the plea agreement in the present case because Ancira was assured that he would not be charged as a "career offender." This Court has noted that:

> "When a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea." *Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987) (quoting *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980)).

However, a mere "understanding" on the defendant's part that he would serve a lesser sentence—pursuant to the plea agreement—than the one he ultimately received will not invalidate his guilty plea. *Self v. Blackburn*, 751 F.2d 789, 792-93 (5th Cir. 1985). In order for an unkept plea bargain to constitute a basis for habeas relief, the petitioner must demonstrate: "(1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise." *Id.* (quoting *Hayes v. Maggio*, 699 F.2d 198, 203-204

---

[7]     Apart from his ineffective assistance of counsel claim in this context, Ancira suggests that his guilty plea was not voluntary because he was not aware that a greater sentence could be imposed. The March 4, 1991, letter from counsel, *supra,* clearly should have made Ancira aware that his sentence would ultimately depend on "the sentencing authorities" and the court; therefore, there is no merit to Ancira's claim that his plea was involuntary because he received a sentence—within the relevant guideline range—that was greater than he had hoped for.

12

(5th Cir. 1983)).

In relevant part, the written plea agreement in the present case—signed by Ancira personally and by his attorney and the Assistant United States Attorney—established that:

> "The United States of America . . . agrees not to pursue further Title 21 or Title 18 offenses against this defendant with regard to the facts known to the government at the execution of this agreement.
> . . . The United States of America has made no agreement with the defendant or his counsel concerning any possible sentence."

This language does not state or imply a promise on the part of the government not to charge Ancira as a "career offender" pursuant to U.S.S.G. § 4B1.1 or not to recommend that he be so treated.

Furthermore, it was the probation office in Austin, Texas, and not the U.S. Attorney's office, that recommended application of the "career offender" provisions in this case. *See* PSR ¶ 29. The probation office was not a signatory to the plea agreement, so this recommendation—which was ultimately adopted by the district court—cannot be attributed to any party to the plea agreement.

III. Violation of Rule 11

Ancira argues that the district court violated Fed. R. Crim. P. 11(c) in failing to admonish him that he could receive a sentence greater than that contemplated by the parties to the plea agreement. However, this alleged failure to comply with the requirements of Rule 11 constitutes neither a constitutional nor a jurisdictional deficiency. *United States v. Prince*, 868 F.2d 1379,

13

1385 (5th Cir.), *cert. denied*, 110 S.Ct. 321 (1989).  Neither has Ancira shown that this alleged failure to comply with Rule 11 could not have been raised on direct appeal, nor that it "resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.'"  *Id.* (citation omitted).  Therefore, this allegation of error may not be considered in a collateral attack under section 2255.[8]

IV.  Government's Failure to Give Notice of Intent to Seek Enhancement

Ancira contends that the government failed to file notice that it intended to seek an enhancement of his sentence, a violation of 21 U.S.C. § 851.[9]  However, section 851 does not apply to a defendant whose sentence is enhanced under the sentencing guidelines—in this case, pursuant to the career offender provisions of U.S.S.G. § 4B1.1—as long as the enhanced sentence is

---

[8]    The transcript of the rearraignment hearing reflects that the district court complied with the requirements of Rule 11(c).  The court informed Ancira of the maximum sentence (forty years) he faced, and directed that the terms of the plea agreement be read into the record.  The court further explained that Ancira's sentence would ultimately be determined by the court based on the statutory guideline range recommended by the probation office, a guideline range calculated with Ancira's criminal history in mind.

[9]    Ancira also argues that the government's enhancement of his sentence was prohibited by the plea agreement, which asserted that the government would not pursue further Title 18 or Title 21 offenses.  Any argument that the parties could have reasonably understood this assertion to extend to enhancement of Ancira's sentence under U.S.S.G. § 4B1.1 collapses in light of the immediately following provision in the Plea Agreement:  "The United States of America has made no agreement with the defendant or his counsel concerning any possible sentence."

14

within the statutory range, as is the case here. *See United States v. Marshall*, 910 F.2d 1241, 1245 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 976 (1991).[10] Therefore, "Since the Sentencing Guidelines do not require that the defendant be given notice when the Government intends to seek Career Offender status," the government did not need to give Ancira notice in the present case prior to sentencing him under the guidelines. *Id.* (footnote omitted).

V. Erroneous Application of the Sentencing Guidelines

Ancira argues that the district court failed to apply the sentencing guidelines properly in two respects: (1) his diminished mental capacity entitled him to a downward departure pursuant to U.S.S.G. § 5K2.13; and (2) his acceptance of responsibility entitled him to a downward departure under U.S.S.G. § 3E1.1. While we considered the merits of certain claims related to these contentions in the context of addressing Ancira's allegations of ineffective assistance of counsel, *supra*, we need not do so here as it is well-settled that, "A district court's technical application of the Guidelines does not give rise to a constitutional issue" cognizable under 28 U.S.C. § 2255. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). Furthermore, neither has Ancira demonstrated that these alleged misapplications of the sentencing

---

[10]    The (enhanced) sentence ultimately imposed against Ancira——240 months——falls within the statutory range of 5 to 40 years. *See* 21 U.S.C. § 841(b)(1)(B).

15

guidelines could not have been raised on direct appeal, nor that they "resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Prince*, 868 F.2d 1379, 1385 (5th Cir.), *cert. denied*, 493 U.S. 932 (1989) (citation omitted).

## VI.  Improper Denial of Evidentiary Hearing

Finally, Ancira complains that the district court erred when it denied him an evidentiary hearing.  However, an evidentiary hearing is not necessary when claims brought pursuant to a section 2255 petition may be clearly refuted without examining evidence beyond the record.  *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).  The record is clearly adequate to dispose fairly of Ancira's present section 2255 allegations.

## Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

16